# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 3, 2006          Decided June 19, 2007

No. 05-7096

CAMBRIDGE HOLDINGS GROUP, INC., A DELAWARE
CORPORATION,
APPELLANT

v.

FEDERAL INSURANCE COMPANY *D/B/A* CHUBB GROUP OF
INSURANCE COMPANIES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02192)

———

*Kenneth T. Ward* argued the cause for appellant. With him
on the briefs was *Thomas A. Mauro*.

*Edward G. Gallagher* argued the cause and filed the brief
for appellee.

Before: GARLAND and BROWN, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Cambridge Holdings Group, Inc. sued Federal Insurance Co. in the United States District Court for the District of Columbia, asserting breach of contract and related claims. The district court dismissed the suit for failure to state a claim upon which relief can be granted, and Cambridge now appeals. Federal Insurance contends that we must dismiss the appeal because it is was not filed within the time permitted by Federal Rule of Appellate Procedure 4(a). To resolve that issue, we must consider additional provisions of the Federal Rules that govern the following subissues: the appealability of an order that does not dismiss all of the named parties to a complaint; the validity of an attempt to serve process by mail; and the starting gun of the filing period when an order is not set forth in a separate document. After exploring the intricacies of those provisions, we conclude that the instant appeal was indeed untimely, and we therefore dismiss it.

I

This diversity case arose out of a complicated multiparty transaction, the details of which are neither in the appellate record nor relevant to our disposition. Cambridge, a Delaware corporation with its principal place of business in Washington, D.C., loaned $2.1 million to three entities that are not parties to this lawsuit. Part of the loan agreement required a Florida law firm, Altschul, Landy & Collier, P.A., to hold $1.5 million in escrow for distribution to the borrowers at a later date. The escrow arrangement was governed by a separate "Guaranty Deposit Agreement" signed by Cambridge, the three borrowers, and the escrow agent, Altschul Landy. The Agreement required that the escrow account be protected by a "fidelity bond" payable to Cambridge in the event of misfeasance, malfeasance, or breach of the Agreement by the law firm. To satisfy this requirement, Altschul Landy obtained an insurance policy from the Federal Insurance Company through the company's agent,

Babb, Inc. The policy listed Altschul Landy as the insured party and Cambridge as the "loss payee."

Cambridge alleges that, after the $1.5 million was placed in escrow, Altschul Landy violated the Agreement and misappropriated the money. Despite repeated demands by Cambridge, the law firm failed to repay the misappropriated funds or to submit a claim on the policy to Federal Insurance. When Cambridge itself sought to make a claim on the policy, Federal Insurance refused to pay on the ground that only the insured party could make a claim.

On October 22, 2001, Cambridge sued Federal Insurance, Babb, and Altschul Landy in the United States District Court for the District of Columbia. Counts 1 through 4 of the complaint sought damages from Federal Insurance and Babb on breach of contract and related theories. Count 5 sought an injunction requiring Altschul Landy to submit a claim on the insurance policy.

On July 12, 2004, the district court issued a memorandum opinion and entered an order in its docket dismissing Counts 1 through 4 for failure to state claims upon which relief can be granted. *See Cambridge Holdings Group, Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 91 (D.D.C. 2004) (memorandum opinion); U.S. District Court for the District of Columbia, Docket Report for Case No. 01-cv-02192. The court did not address the remaining count, Count 5, which sought injunctive relief solely against Altschul Landy.

After the court dismissed the claims against Federal Insurance and Babb, Cambridge's suit lay dormant. The docket reflects no activity between the entry of the dismissal on July 12, 2004, and April 28, 2005, when the court sua sponte scheduled a status hearing for the following month. At that hearing, which

was attended by representatives of Cambridge, Federal Insurance, and Babb (but not Altschul Landy), a dispute arose as to whether the district court's July 12, 2004 order was final and appealable, in light of the failure to dismiss Count 5 of the complaint. Although the district court ordered briefing on the question, it never expressly resolved the issue. Instead, on June 20, 2005, the court entered an order dismissing Count 5 for failure to prosecute and dismissing the case in its entirety. This disposition was repeated in a separate document, entitled "Final Judgment," that was also entered on June 20, 2005.

Cambridge filed a notice of appeal on July 19, 2005.

II

On appeal, Cambridge challenges only the dismissal of its breach of contract claim against Federal Insurance. In addition to defending on the merits, Federal Insurance contends that we must dismiss the appeal because it is untimely.

The time for filing a notice of appeal is governed by Federal Rule of Appellate Procedure 4(a), which provides that an appeal from a decision of a district court in a civil case may only be taken by filing a notice of appeal "within 30 days after the judgment or order appealed from is entered." FED. R. APP. P. 4(a)(1)(A); *see* FED. R. APP. P. 3(a)(1); *see also* 28 U.S.C. § 2107(a). In this case, the district court's order dismissing Cambridge's breach of contract claim was entered in the docket on July 12, 2004. Cambridge, however, did not file a notice of appeal until July 19, 2005 -- 372 days later.

Despite this delay, Cambridge asserts that its notice of appeal was timely because it was filed within thirty days of the entry of the district court's June 20, 2005 judgment, which dismissed Count 5 and the complaint in its entirety. Cambridge

maintains that Rule 4(a)'s clock did not begin to run until the entry of that later judgment, for two reasons. First, it argues that the July 12, 2004 order was not an appealable final order because it did not resolve the litigation as to all parties as required by Federal Rule of Civil Procedure 54(b). Second, Cambridge asserts that, even if the July 12, 2004 order was otherwise appealable, it still did not start the Rule 4(a) clock because it was not set forth in a "separate document," as required by Federal Rule of Civil Procedure 58(a) and Federal Rule of Appellate Procedure 4(a)(7).

We address these two arguments in Parts III and IV, respectively.

## III

Cambridge's first contention is that the district court's July 12, 2004 order was not appealable because it did not dispose of Count 5 of the complaint, which sought injunctive relief against Altschul Landy. Generally, the jurisdiction of courts of appeals is limited to appeals from "final decisions of the district courts." 28 U.S.C. § 1291; *see Outlaw v. Airtech Air Conditioning & Heating, Inc.*, 412 F.3d 156, 159 (D.C. Cir. 2005). The finality of a decision in a case involving multiple claims or multiple parties is governed in part by Federal Rule of Civil Procedure 54(b), which specifies that a district court

> may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer

> than all the parties shall not terminate the action as to any of the claims or parties . . . .

FED. R. CIV. P. 54(b). The district court's July 12, 2004 order indisputably failed to adjudicate Count 5 of the complaint, and did not make the required "determination and direction." Therefore, Cambridge argues, that order was not final, and hence not appealable, because it adjudicated "fewer than all the claims [and] the rights and liabilities of fewer than all the parties." *Id.* And if the July 12, 2004 order was unappealable, it could not have started Rule 4(a)'s limitation on Cambridge's time to file a notice of appeal. As a consequence, Cambridge asserts, the clock did not start until June 20, 2005, when the district court entered a final, appealable order under Rule 54(b).

Under most circumstances, Cambridge's analysis would undoubtedly be correct. In this case, however, Altschul Landy did not file an answer, enter an appearance, or otherwise participate in the litigation. Federal Insurance contends that Altschul Landy was never even served with a summons and complaint pursuant to Federal Rule of Civil Procedure 4. In these circumstances, Federal Insurance argues, Altschul Landy was not one of the "parties" to the litigation within the meaning of Rule 54(b). If this argument is correct, the district court's July 12, 2004 order was final and appealable because it *did* decide all of the claims against Federal Insurance and Babb, and thus fully resolved the rights and liabilities of all the properly served parties to the lawsuit.

In order to resolve this dispute, we must address two issues. First, we must determine whether a defendant that has never been served is a "party" for purposes of Rule 54(b), a question of first impression in this circuit. Second, because we conclude that an unserved defendant is not a party, we must determine whether Altschul Landy was ever served.

7

A

Although the interpretation of the term "parties" in Rule 54(b) is a question of first impression in this circuit, that is hardly the case elsewhere. To the contrary, our sister circuits "treat an improperly served defendant as never [having been] before the district court" for purposes of Rule 54(b). *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 n.1 (5th Cir. 2003); *see* 15A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3914.7 (2d ed. 1992). Eight circuits have expressly adopted this view.[1] None has adopted a contrary interpretation.[2]

---

[1] *See Leonhard v. United States*, 633 F.2d 599, 608 (2d Cir. 1980); *Gomez v. Gov't of the Virgin Islands*, 882 F.2d 733, 736 (3d Cir. 1989); *Swanson v. Whitmare*, No. 88-7506, 1988 WL 60932, at *1 (4th Cir. June 3, 1988); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 n.1 (5th Cir. 2003); *Smith v. Bd. of County Comm'rs*, No. 97-3107, 1998 WL 321045, at *1 (6th Cir. June 2, 1998); *Young v. Mount Hawley Ins. Co.*, 864 F.2d 81, 83 (8th Cir. 1988); *Raiser v. Utah County*, 409 F.3d 1243, 1245 n.2 (10th Cir. 2005); *Insinga v. LaBella*, 817 F.2d 1469, 1470 (11th Cir. 1987).

[2] The First Circuit has noted the issue but thus far has not taken a position. *See Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28, 33 (1st Cir. 2006). The Seventh and Ninth Circuits have generally adopted the approach of the other circuits, but with different qualifications. Whatever their wisdom, those qualifications would not affect the outcome of this case, and we therefore take no position on them. The Seventh Circuit has thus far applied the other circuits' approach only when two conditions have been met: First, "an attempt by the plaintiff to serve the complaint on the unserved defendant would be untimely under FED. R. CIV. P. 4(m)," and second, "any new complaint against the unserved defendant would be barred by the statute of limitations." *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001). Both conditions are met here. *See* FED. R. CIV. P. 4(m) (requiring service within 120 days after the filing of the

8

At oral argument, Cambridge conceded that the position adopted by the other circuits is correct, *see* Oral Arg. Recording at 1:50, and we now join them in holding that defendants that have not been subject to effective service are not "parties" within the meaning of Rule 54(b). As a consequence, we also hold that a district court order disposing of all claims against all properly served defendants satisfies the requirements of Rule 54(b), even if claims against those not properly served remain unresolved.

This position not only has the virtue of consistency with our sister circuits, but also reflects the soundest interpretation of Rule 54(b). The rule was enacted to codify "[t]he historic rule in the federal courts" prohibiting "piecemeal disposition of litigation" by preventing an appeal in a case where litigation before the district court is ongoing. *See* FED. R. CIV. P. 54 advisory committee's notes to 1946 amendment. The failure to dispose of a claim against a served party renders an order unappealable because such a claim will necessarily involve further action by the parties or the district court. By contrast, when a district court dismisses a suit as to all served defendants and only an unserved defendant remains, there is generally no reason to anticipate additional proceedings before the district court. Indeed, unless the procedural requirements of effective service of process have been satisfied, the court lacks personal jurisdiction to act with respect to that defendant at all. *See Omni*

---

complaint); D.C. CODE § 12-301(7) (three-year statute of limitations for contract actions). The Ninth Circuit has qualified the other circuits' approach by holding that an order disposing of all claims only against served parties is not final if "it is clear from the course of proceedings that further adjudication is contemplated" by the district court. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 871-72 (9th Cir. 2003). In the instant case, there is no such indication in the district court record.

*Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002).

B

The application of Rule 54(b) to this appeal therefore depends on whether Altschul Landy was made a party to the suit through valid service of process. The relevant rule for this case is Federal Rule of Civil Procedure 4(h), which provides two methods for effecting service: "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," FED. R. CIV. P. 4(h)(1); or by complying with "the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State," FED. R. CIV. P. 4(e)(1) (cross-referenced by Rule 4(h)(1)).

Cambridge does not contend that it effected service on Altschul Landy by either of these methods. Instead, it relies solely on another provision of Rule 4, asserting that "[t]he Law Firm was served by mail as authorized by the Federal Rules of Civil Procedure 4(c)(2)(C)(ii)." Appellant's Reply Br. 1 (emphasis omitted). In support, Cambridge cites a letter to its counsel from Joseph Altschul, who was at one time a member of Altschul Landy. The letter, dated November 19, 2001, states in relevant part:

> On Friday, November 16, 2001, I received by Fedex your November 15, 2001 and October 22, 2001 letters, together with a notice and complaint against [Federal Insurance], Babb, Inc., and Altschul, Landy & Collier, P.A.

> Please be advised that I resigned from Altschul, Landy & Collier, P.A. earlier this year and do not have the authority to speak on behalf of the firm, which is being wound-up by Nancy S. Landy.

Joint Appendix tab 4, exhibit B. Cambridge argues that this letter is sufficient to establish service because it "clearly acknowledges receipt of the complaint, and through the reference to the 'notice' of October 22, 2001, of the summons." Appellant's Reply Br. 1. According to Cambridge, "[s]ervice *under Rule 4(c)(2)(C)(ii)* is complete when the recipient receives the complaint and summons and has actual notice of the pending lawsuit," and "[s]uch service need not be officially acknowledged in any particular form." *Id.* (emphasis added).

This argument has a number of shortcomings, not the least of which is that the letter upon which it relies establishes only that Joseph Altschul had notice of the pending lawsuit. It does not establish that the law firm had notice, since the letter stated that Altschul was no longer a member of the firm and was without authority to speak on its behalf.

But the more significant defect in Cambridge's argument is that there is no "Rule 4(c)(2)(C)(ii)" in the relevant version of the Federal Rules of Civil Procedure. That provision was deleted in the 1993 amendments to the rule, and was replaced with a new provision, subsection 4(d). *See* FED. R. CIV. P. 4(d) advisory committee's notes to the 1993 amendments. As amended, Rule 4(d) forecloses Cambridge's contention that federal "service by mail" is complete whenever a defendant acknowledges actual receipt of the summons and complaint. In fact, Rule 4(d) is not a rule about "service by mail" at all, but rather a rule about "waiver of service." The rule permits a plaintiff to use the mail to "notify . . . a defendant of the commencement of the action and request that the defendant

waive service of a summons." FED. R. CIV. P. 4(d)(2). If the defendant returns a waiver, the rule provides that "the action shall proceed . . . as if a summons and complaint had been served at the time of filing the waiver." FED. R. CIV. P. 4(d)(4). But if the defendant does not waive, the rule does not suggest that service is nonetheless effective. To the contrary, the rule provides that, "[i]f a defendant . . . fails to comply with a request for waiver . . . , the court shall impose the costs *subsequently incurred in effecting service* on the defendant." FED. R. CIV. P. 4(d)(2) (emphasis added). And Rule 4(h), referenced above, lists the two ways in which such service may be effected where "a waiver of service has not been obtained." FED. R. CIV. P. 4(h); *see also* FED. R. CIV. P. app. Form 1A (form for requesting a waiver of service, advising the recipient that "[i]f you do not return the signed waiver . . . , [the plaintiff] *will take appropriate steps to effect formal service* in a manner authorized by the Federal Rules" (emphasis added)). Indeed, the Advisory Committee notes make clear that one of the purposes of the 1993 amendment was to prevent precisely the mistake that Cambridge made here:

> The former text described this process as service-by-mail. This language misled some plaintiffs into thinking that service could be effected by mail without the affirmative cooperation of the defendant. It is more accurate to describe the communication sent to the defendant as a request for a waiver of formal service.

FED. R. CIV. P. 4(d) advisory committee's notes to 1993 amendments (citation omitted).

Relying on the Second Circuit's decision in *Morse v. Elmira Country Club*, 752 F.2d 35, 41 (2d Cir. 1984), Cambridge insists that service by mail is effective under Rule 4, regardless of whether the defendant returns a waiver, as long as the defendant

receives actual notice of the lawsuit. Appellant's Reply Br. 1. But Cambridge's reliance on *Morse* has two fatal flaws. First, the Second Circuit decided *Morse* prior to the 1993 amendment to Rule 4, and based its decision on since-deleted language from the former subsection (c)(2)(C)(ii). *See Morse*, 752 F.2d at 36 & n.1. Second, even before the 1993 amendment, this court had expressly declined to follow *Morse*. *See Combs v. Nick Garin Trucking*, 825 F.2d 437, 446-47 (D.C. Cir. 1987). We therefore reiterate that, under Rule 4(d), waiver of service is not effective unless the defendant returns a waiver.

Cambridge does not contend that Altschul Landy ever returned a waiver of service, and concedes that there is no indication in the record that it did. *See* Oral Arg. Recording at 5:50. We therefore find that Cambridge did not obtain a valid waiver of service under Rule 4(d). And because Cambridge does not claim that it served Altschul Landy by any other means authorized by Rule 4, we conclude that the law firm was never properly served and therefore was not a "party" within the meaning of Rule 54(b).[3] Accordingly, the district court's July 12, 2004 order was a final judgment within the meaning of that

---

[3]When the inevitability of this outcome became clear during oral argument, Cambridge responded in its rebuttal -- creatively, but belatedly -- that in sending the complaint to Joseph Altschul in November, 2001, it was not actually seeking a waiver of service under Rule 4(d). Instead, Cambridge said, it was accomplishing personal service by a private process server: to wit, the Federal Express delivery person. *See* Oral Arg. Recording at 30:50. We decline to consider this novel and unlikely theory, both because it came too late, *see Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (holding that contentions first raised in oral argument are waived), and because it is inconsistent with the theory of federal mail service advanced in Cambridge's briefs.

rule, because it fully resolved the litigation as to all parties to the lawsuit.[4]

## IV

Cambridge's remaining argument is that, even if the district court's July 12, 2004 order was a final and appealable judgment, it did not start the limitations period fixed by Rule 4(a) of the Federal Rules of Appellate Procedure because it was not set forth in a separate document, as required by Rule 58 of the Federal Rules of Civil Procedure. This argument is also without merit.

Rule 58(a)(1) states: "Every judgment and amended judgment must be set forth on a separate document." FED. R. CIV. P. 58(a)(1). Cambridge notes that the district court's July 12, 2004 order dismissing its claims against Federal Insurance was not set forth in a separate document. It then cites this court's opinion in *Pack v. Burns International Security Service*, 130 F.3d 1071 (D.C. Cir. 1997), which held that, when a district court fails to comply with Rule 58's separate document requirement, "'[a]n appellant may . . . safely wait until a conforming judgment has been entered and file an appeal at that time.'" Appellant's Br. 18 (quoting *Pack*, 130 F.3d at 1072). Because the district court did not issue a "conforming judgment"

---

[4]Some courts have held that a judgment that does not resolve a claim against one of several defendants is not appealable under Rule 54(b) if the effectiveness of service on that defendant is uncertain. *See Swanson*, 1988 WL 60932, at *1; *Patchick v. Kensington*, 743 F.2d 675, 677 (9th Cir. 1984). Although Cambridge insists that its service was effective, we have concluded that its only method of service was ineffective as a matter of law. We therefore need not decide how we would address a case in which there is factual uncertainty as to whether a party was properly served.

in a separate document until June 20, 2005, and because Cambridge filed its notice of appeal within thirty days of the entry of that document, Cambridge contends that its appeal was timely.

Once again, Cambridge has apparently been consulting an outdated copy of the Federal Rules. In 2002, Rule 4 of the appellate rules and Rule 58 of the civil rules were amended to "ensure that parties will not be given forever to appeal . . . when a court fails to set forth a judgment or order on a separate document in violation of FED. R. CIV. P. 58(a)(1)." FED. R. APP. P. 4(a)(7) advisory committee's notes to 2002 amendments. Rule 4(a)(7) now states:

> *A judgment or order is entered for purposes of this Rule 4(a) . . . when* the judgment or order is entered in the civil docket . . . and when the earlier of these events occurs: the judgment or order is set forth on a separate document, or *150 days have run from entry of the judgment or order in the civil docket . . . .*

FED. R. APP. P. 4(a)(7)(A) (emphasis added); *see also* FED. R. CIV. P. 58(b) (reflecting a corresponding amendment). Thus, when a district court enters an order that would otherwise constitute a final judgment, but fails to set it forth in a separate document as required by Rule 58, the Rule 4(a) clock begins to run 150 days after the order is entered in the docket. *See Outlaw*, 412 F.3d at 162-63.

In this case, there is no dispute that the district court's order dismissing Cambridge's claims against Federal Insurance was entered in the civil docket on July 12, 2004. *See* U.S. District Court for the District of Columbia, Docket Report for Case No. 01-cv-02192. Pursuant to amended Rule 4(a)(7)(A), it was therefore entered for purposes of Rule 4(a) 150 days later -- on

December 9, 2004 -- notwithstanding the lack of a separate document. When confronted with the amended rule at oral argument, counsel for Cambridge conceded as much. *See* Oral Arg. Recording at 1:35. Accordingly, Rule 4(a)'s thirty-day period ran out in January 2005 -- six months before Cambridge filed its notice of appeal on July 19, 2005.

## V

For the foregoing reasons, we conclude that Cambridge's appeal was untimely, and it is therefore

*Dismissed*.